Thank you, Judge. The United States against Sanchez-Yara is next for argument. Good morning, Your Honor. Mr. Kinnock. May it please the Court. This case really presents the issue, or the question, or the thought of, does the Fourth Amendment mean less than it used to mean? And I say that citing Kyllo and being aware that Jones also cites Kyllo for that proposition. Initially, defendant's position is there was no Fourth Amendment warrant at all in this stingray cell site simulator search. But if there was a warrant at all, it was a general warrant allowing a general search and void. What purports to be the warrant cites the wrong standard for issuance of a Fourth Amendment warrant. It cites for evidence that might lead to evidence of a crime. And this is really the 2703 standard. What's labeled as a warrant in this case, I suggest, is really a 2703 order that's been doctored around, has the word warrant. Mr. Kennedy, if I understand the argument of the United States, it is that this warrant was issued under Rule 41. And indeed, it so recites. Rule 41 is a standard probable cause warrant. And of course, Judge Castillo recited that he found probable cause. Why isn't that the end of things? You have a Rule 41 warrant with an express finding of probable cause. Because it states within the body of the warrant that it's directed to find something that will lead to evidence of a crime. Yes. You're not suggesting that we resurrect the mere evidence doctrine that Warden against Hyden discarded in 1967, are you? I'm saying that this warrant is so tenuous that it is not satisfying the Fourth Amendment. That in what it is authorizing is a general search. And if it's authorizing a general search, it's a void warrant. I'm fully aware that there are cases that I've. Now I'm lost. If you're contending that it's a general warrant, that can't be authorized even with probable cause. I understood your brief to be saying that the statute authorized a warrant on less than probable cause, not that this was a forbidden search, even if the warrant was supported by probable cause. Am I misunderstanding? Respectfully, yes, Your Honor. And I will say that my opening brief was not that clear about it. But the issue on the warrant was raised, but also the general search under the heading investigatory search, which is what a general search is. No, they are different. A general search is something that does not particularly describe the information in places. An investigatory search is one that seeks, well, in the words of Warden against Hyden, mere evidence. And the Supreme Court has said in that case that it's permissible to have a warrant to seek mere evidence. I believe in my brief I cited the Marshall versus Barlow case, which talks about general searches. Perhaps I was unwise to use the word investigatory. But what I'm really driving at and what I very carefully clarified in my reply brief was the general search aspect of this. In the government's brief, the government discusses this as being a tracking warrant, which would avoid the whole problem of the search. But this is not, I'm sorry, a tracking instrument. Call it what you will. But this is not merely a tracking device that's used against Mr. Sanchez. It is an actual, it is the cell-side simulator stingray machine, which conducts the search. That's such a instrument, commands the cell phone to respond. Tracking is merely following. And in Knox, it talks about tracking is what can be done visually. If you have an agent follow along, you can track. Here, they're drawing out information from a cell phone. The cell phone's located in a residence. There's an expectation of privacy. And there's also, arguably, a government trespass in the sending in of electronic signals, the entry of the residents with electronic signals as being a trespass. The thing that's disturbing, very, well, disturbing in this case, is that there's never any real explanation of what this stingray, of what was actually used, whether it was a stingray or a subsequent addition, what the government means by a cell-site simulator. And really, I would mention to the court, the Patrick case decided this year addresses so many of the concerns that exist. And one of the things, one walks away from the Patrick case with the awareness that nobody really knows what was done. And in this Sanchez case, nobody knows what was done. We don't know what extent of a search took place, because defense has never been informed of what instrument was actually used. So we can't figure out what the capacity of that instrument was. If the instrument was toned down to leave us. Is there any, are you contending that the agents acquired the contents of communication without the kind of warrant required by the wiretapping statute? More accurately, I think I'd say I'm contending they may have acquired such. Are you contending that they did? I mean, presumably, you would then build a record to show that they acquired or used the contents of communication. Has there been any effort to introduce in evidence any contents of communications? Well, in a sense, Judge, yes. Because I presented several motions trying to find out what was happening here. And I asked for an evidentiary hearing. And the motion was denied it. At every step, to find out what actually happened, what information the agents received, that law. I asked a specific question. Has the government attempted to use the contents of any communications? That I don't know. Well, if they're not being offered in evidence, the most you could get would be an order suppressing such contents. If they're never offered in the first place, an order suppressing them wouldn't do any good. Well, I can't agree with that, Your Honor. Because if they existed, I would be offering it in support of a motion to bar it. Do you have any reason to believe that the information acquired concerned more than your client's physical location? Do I have any evidence? I have the evidence that the government used a cell site simulator. I have the evidence that cell site simulators are often stingrays. I have the evidence from the Patrick case that recites what stingrays are capable of. So I really don't know. All the Patrick case says is that they're capable of revealing somebody's location. Well, I would also commend the dissent's opinion. Do you have any reason to believe that such a device ever reveals the contents of communications? Sure. What's that reason? If one read in the Lambus case, the dissent in the Patrick case talks about it. One of the big problems in this case is that, no, I don't have the evidence because I couldn't get a hearing. So I can't say in this particular case, I can't say it. I can't tell you. I looked and made sure I knew it. On September 14, 2016, for that transcript, page 23, my request for a hearing is denied. And I put it in the brief. I have trouble understanding how I can be held accountable for not knowing what happened, where the government is keeping it secret from me and keeping it secret from the court. I think it's really disturbing. Mr. Kennedy, could I ask you from a different angle? Suppose the agents are conducting an authorized wiretap, and they pick up a message to one of the targets. Call Bill at the following phone number. If that number is a landline, does law enforcement need a warrant to determine the location of that landline? They don't, do they? Judge, I honestly don't know. I would think from what I've heard of pen registers, they can get a pen register order and pursue a landline. That would be perfectly all right. So why is this different? Because this is a mobile phone rather than a landline. Oh, I can answer that, Your Honor, which is it's an intrusion into the house. And what's wrong here is in the other cases, like a pen register. Why isn't a landline an equal intrusion into the house? No, Judge. That's why pen registers are hard. Almost by definition, a landline physically intrudes. It physically exists. But the intrusion is a government action. Now I'm completely into metaphysics. If you're thinking about physics, your client was located by signals your client's phone sent outside the house. That, Your Honor, I would disagree with 100%. Well? The nature of a stingray is said to be that it takes control of the phone. Just like Days of Rage, a little while ago in Chicago, the phones were going dead for the demonstrators. And it worked out the government had a way of drawing out all this information from the phones. And it used up a large amount of electric battery power. So I am saying. Thank you, counsel. OK. Oh, I'm sorry, Your Honor. I went over the red. But thank you. Mr. Zurb. May it please the court. The district court did not commit any error in denying the defendant's motion to suppress the location information from the defendant's cell phone in July 2015. An HSI special agent applied for a warrant. He supported that warrant with a probable cause affidavit. Chief Judge Castillo reviewed the warrant application. He made a specific probable cause determination that the warrant affidavit was, in fact, supported by probable cause. And he issued the warrant. The warrant that was issued here authorized law enforcement officers to use this electronic investigative technology, a cell site simulator, to locate the defendant's phone based on the particular signals that the defendant's phone emitted. And in this way, contrary to what Mr. Kennedy just argued, this was in no way a general search. The place to be searched was articulated in the warrant application. And in the warrant, it was the phone. And the items to be seized were nothing more than the location information that allowed law enforcement officers to find the phone when the cell site simulator was being used. Moreover, that's exactly what happened in this case. Law enforcement officers used a cell site simulator in the morning of July 27, 2015. They were able, with that simulator, to find the signals being emitted from the defendant's phone. And through the use of that device, were able to determine that the defendant's phone was located precisely in his residence. That was the extent to which a cell site simulator was used that morning, and the extent to which a search was conducted pursuant to the warrant that was issued in this case. Can this technology be used to intercept contents of communications? Uh, the record does not say what. There was no hearing. There was no hearing. But I'm asking you, does this technology allow the interception of contents? I do not know. What I do know is what the warrant. You seen the news the last 24 hours or so? I have seen the news. About Washington? I did. Mm-hmm. The problem is that there is no express record about what specific device was used by these law enforcement officers to find the phone in this case. But that's because of an express affirmative waiver by the defendant at the hearing regarding this information. And he made that waiver twice during the hearing. The hearing took place on September 14, 2016. The transcript is Documentary 104. If you look at page 5 of that transcript, the defendant was talking about how he provided a set of exhibits to the district judge and said that based on that set of exhibits, he could confirm that a cell site simulator was used. He then made the affirmative statement, that's all I need. That's all I, the defense, need to be able to present this motion. It went on at pages 16 and 17 of that same transcript. The government offered a stipulation that yes, in fact, a cell site simulator was used in the morning of July 27, 2015. Would that device have, in essence, for lack of a better word, pinged all cell phones within range? I think it's conceivable. And the warrant application and affidavit and warrant itself contemplated that possibility. The application and affidavit. You're speaking there of a provision that says all we're going to keep is the information about this phone? Precisely. The whole point of this warrant was to locate that phone. And it instructed, the application said that this is what we were going to do. And the warrant instructed law enforcement officers not to do more. It was locate this phone using the signals emitted by this phone and don't do anything else if you inadvertently come across any information from any other phone. I'd also add that if there is any information that's inadvertently being picked up by pinging, as your honor put it, any other phone, one, it's covered by the warrant. But even if that's problematic, the defendant doesn't have any standing regarding that point. And the defendant admitted as such when he was making his argument in the district court. All the defendant has an argument to make is about whether or not it was right to ping his cell phone and get information from his cell phone. Going back to this point about the waiver, again, he made this express waiver two times. And it's also, he made it in the context of the argument that he was making in the district court and the argument that he made in the opening brief in this court. The defendant has been a moving target through this litigation. In the district court, the argument was that the government's warrant application, an affidavit, did not adequately meet the probable cause standard by the Fourth Amendment. And instead, that the government only satisfied this lower threshold laid out based on reasonable grounds in 18 U.S.C. Section 2703D. That was the argument. That was the argument to which the government responded. That was the basis for any objections to any additional information coming in that was not relevant to answering that question that the defendant posed. And that's the argument that Judge Alonzo answered in the district court. He makes the same argument again here in his opening brief and only now, only on his reply brief, is he really changing his tactic in talking about how all this other information might have been possibly obtained through the use of a cell phone, cell site simulator, excuse me. At this point, it's just pure speculation. There's no basis in the record and no basis for him to have thought that anything other than the location information from this cell phone was obtained in the few minutes that it was used in the morning of July 27th. Unless this court has any additional questions, the government asks this court to affirm the judgment of the district court. Thank you. Thank you very much. Mr. Kennedy, the court appreciates your willingness to accept the appointment in this case. The case is taken under advisement.